IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MORSE ELECTRIC, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 22-CV-91-JWB-GLJ |
| ) | |
| **STEARNS, CONRAD AND** ) | |
| **SCHMIDT CONSULTING** ) | |
| **ENGINEERS, INC.,** ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion to Stay and to Compel Arbitration [Docket No. 51]. This action arises out of a contract dispute between Plaintiff Morse Electric, Inc. ("MEI") and Defendant Stearns, Conrad and Schmidt Consulting Engineers, Inc. ("SCS"). On August 24, 2023, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636 [Docket No. 44].[1] Plaintiff now seeks an order compelling this action to arbitration. For the reasons stated below, the undersigned Magistrate Judge recommends that Plaintiff's Motion to Stay and to Compel Arbitration be DENIED.

---

[1] District courts have reached different conclusions regarding whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636. *Compare Wilken Partners, L.P. Champps Operating Corp.*, 2011 WL 1257480, at *1 (D. Kan. Apr. 4, 2011) ("District courts that have considered the nature of an order to stay proceedings pending arbitration and to compel arbitration have concluded that these are non-dispositive orders"), *with Coxcom, Inc. v. Egghead Telecom, Inc.*, 2009 WL 4016629, at *1 (N.D. Okla. 2009 ("Courts generally regard a motion to compel arbitration either as a case dispositive matter or a matter not within the statutory authority of a U.S. Magistrate Judge to resolve by Order."). Accordingly, out of an abundance of caution, the undersigned Magistrate Judge issues a Report and Recommendation on Plaintiff's Motion to Stay and to Compel Arbitration.

## BACKGROUND

On September 9, 2020, SCS executed an agreement with Pine Bend RNG, LLC for construction of the Pine Bend Renewable Natural Gas Production Facility in Inver Grove Heights, Minnesota ("Pine Bend Site"). Docket No. 14-1, p. 16-52. Subsequently, on June 2, 2021, MEI and SCS entered into a subcontracting agreement in which MEI agreed to perform electrical construction services at the Pine Bend Site under a construction service order. Docket No. 17-1. The cover sheet of the service order identifies several documents which are to be included as part of the service order. Docket No. 17-1, pp. 2-3. Pertinent here are "Service Order No. 06-SO00430" ("Service Order") and "Attachment J – Morse Electric, Inc. (MEI) Proposal 020-255 REVb – May 27, 2021. Includes Rate Sheets" ("MEI's Proposal"). *Id.* The Service Order is signed by Brian Morse of MEI and provides in Article 15 that "[i]n the event of a dispute between SCS and [MEI], the matter shall be resolved through litigation." Docket No. 23-2, p. 5. Conversely, MEI's Proposal indicates that "MEI reserves the right for any dispute . . . to be heard before [the] American Arbitration Association (AAA)." Nonetheless, Article 16 of the Service Order provides, in pertinent part:

> This Service Order represents the entire contract between Subcontractor Seller and SCS. . . . This Service Order and the documents incorporated in or attached hereto constitute the entire agreement between the parties regarding [t]he subject matter hereof and supersedes all other agreements, proposal, discussions, and correspondence, whether oral or written and regardless when made, including without limitation Subcontractor's acknowledgements or invoices, all of which were provided for informational purposes only. **Any reference to Subcontractor's quotation, bid document, or proposal are for information or clarification purposes only and do not constitute acceptance of any term,**

**condition, or instruction contained in such quotation, bid document or invoice.** Docket No. 23-2, p. 6 (emphasis added).

MEI now moves to stay and compel this matter to arbitration pursuant to the arbitration clause contained in the "Commercial Clarifications" section of MEI's Proposal. Docket No. 51, p. 2. However, Defendant SCS contends that compelling this matter to arbitration is improper because MEI's Proposal was for clarification and informational purposes only and, as such, the parties did not agree to arbitration. Docket No. 58, pp. 1-2. The undersigned Magistrate Judge agrees—the parties did not agree to arbitration.

## ANALYSIS

"The Supreme Court has 'long recognized and enforced a liberal federal policy favoring arbitration agreements.'" *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2002) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). However, whether the parties have a valid arbitration agreement is a gateway matter which is "presumptively for courts to decide." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569, 133 S. Ct. 2064, 2068 n. 2 (2013) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. *Howsam*, 537 U.S. at 83 (citing *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). As such, "[b]efore granting a stay of litigation pending arbitration, a district court must determine that an agreement to arbitrate exists. *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). "[W]hen factual disputes may determine whether the parties agreed to arbitrate, the way to resolve them . . . is by proceeding *summarily* to

trial." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014). However, "[w]hen it's apparent from a quick look at the case that no material disputes of fact exist it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *Id*. at 977.

MEI, as the party seeking to compel arbitration, bears the burden of demonstrating the existence of a valid arbitration agreement. *BOSC, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017). In determining whether a party has agreed to arbitrate a dispute, the court applies "ordinary state-law principles that govern the formation of contracts." *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017) (citing *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013)). Article 16 of the Service Order provides that the contract "shall be interpreted under and governed by the laws of the State in which the work is performed," *i.e.*, Minnesota. Docket No. 17-1, p. 22; Docket No. 23-2, p. 6.

"The interpretation of a contract is a question of law if no ambiguity exists, but if ambiguous, it is a question of fact and extrinsic evidence may be considered." *City of Virginia v. Northland Office of Props. Ltd. P'ship*, 465 N.W.2d 424, 427 (Minn. App. 1991). "A contract is ambiguous if its language is reasonably susceptible of more than one meaning." *Murray v. Puls*, 690 N.W.2d 337, 343 (Minn. App. 2004) (citing *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn. 1982)). "In interpreting a contract, the language is to be given its plain and ordinary meaning. . . We read contract terms in such a way as to

give meaning to all of its provisions." *Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998) (internal citation omitted).

SCS contends that MEI's Proposal, and the arbitration provision contained therein, are not binding terms because Article 16 of the Service Order establishes that "[a]ny reference to Subcontractor's quotation, bid document, or proposal are for information or clarification purposes only and do not constitute acceptance of any term, condition, or instruction contained in such quotation, bid document or invoice." Docket No. 58, p. 6; Docket No. 23-2, p. 6. MEI does not argue that this language is ambiguous, and it does not appear to ambiguous on its face. *See* Docket Nos. 51 & 60. Therefore, the interpretation of this language is a question of law, and the provision is to be given its plain and ordinary meaning. *Brookfield Trade Ctr., Inc.*, 584 N.W.2d at 394.

MEI contends that "MEI's proposal contained a multitude of relevant terms the Defendant will darn sure seek to enforce in the future including the contract price; payment terms; the building plans and documents; ***warranty***; indemnity; and on and on." Docket No. 60, p. 2 (emphasis in original). Due to this, MEI contends that interpretating MEI's Proposal as for information and clarification purposes results in "cherry pick[ing]" which contract terms to enforce, and that "Plaintiff [would] not be bound by the other terms in the Service Order" if the Service Order were disavowed as being for information and clarification purposes only. Docket No. 60, p. 2. However, Article 16 of the Service Order indicates that MEI's quotation, bid document, and proposal are for information and clarification purposes—not that the entire Service Order is for information and clarification purposes. Docket No. 17-1, p. 7; Docket No. 23-2, p. 6. Additionally, although MEI's

Proposal does contain information pertaining to the contract price, payment, and warranty terms, the Service Order and the other attachments thereto also contain terms governing the contract price, payment, warranty, indemnity, etc. *Compare* Docket No. 17-4, p. 158 – 85, *with* Docket No. 17-1, pp. No. 1, 4-6. Accordingly, as set forth in Article 16 of the Service Order, the terms included in MEI's Proposal, including the arbitration clause, are not agreed upon terms and are only to be used for informational and clarification purposes. Docket No. 17-1, p. 7. Thus, Article 15 of the Service Order, which requires this matter be resolved through litigation, is the controlling provision.

Furthermore, due to the conflicting provision in the Service Order, the arbitration provision in MEI's Proposal cannot inform or clarify the parties' intent regarding arbitration. Although not discussed by the parties, "[a] meeting of the minds is a necessary element of a contract in Minnesota." *Murray*, 690 N.W.2d at 355. Thus, an arbitration agreement is unenforceable, unless there was a meeting of minds concerning the agreement's essential elements. *Id.* Here, MEI does not dispute that the Service Order and MEI's Proposal contain competing arbitration provisions, and MEI does not attempt to harmonize these contradictory provisions. *See* Docket Nos. 51 & 60. These dichotomous arbitration provisions demonstrate that the parties did not have a meeting of the minds regarding arbitration and, as such, the arbitration provision is unenforceable. *See Waymouth Farms, Inc. v. Olam Americas, Inc.*, 2009 WL 1853186, at *2 (Minn. App. June 30, 2009) (affirming the denial of a motion to compel arbitration because "[t]he sales-confirmation sheets use the mandatory word 'shall' whereas the parties' contracts use the permissive word 'may.' . . . [T]he contradictory language further indicates that there was

not a meeting of the minds regarding mandatory arbitration.") *See also Bellman v. i3Carbon, LLC*, 563 Fed. Appx. 608, 614 (10th Cir. 2014) ("[I]t is undisputed that the Investment Binder contained conflicting provisions regarding arbitration. While the Operating Agreement provided for arbitration, the Subscription Agreement did not. In our view, the documents in the Investment Binder do not demonstrate a meeting of the minds regarding arbitration.") (applying Colorado law).

## CONCLUSION

MEI has failed to meet its burden demonstrating the existence of a binding arbitration agreement. For the reasons stated herein, the undersigned Magistrate Judge hereby RECOMMENDS that Plaintiff's Motion to Stay and to Compel Arbitration [Docket No. 51] be DENIED. Any objections to this Report and Recommendation must be filed within fourteen days, or by January 4, 2024. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objection and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

IT IS SO ORDERED THIS 21st day of December 2023.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**