IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

MORSE ELECTRIC, INC.,

      Plaintiff,

v.                                                      Case No. 22-91-JWB

STEARNS, CONRAD AND SCHMIDT, CONSULTING ENGINEERS, INC.,

      Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion for attorney's fees (Doc. 214) and motion for prejudgment interest (Doc. 217). Plaintiff failed to file a response and the time for doing so has now passed. For the reasons set forth herein, the motion for attorney's fees is GRANTED IN PART and DENIED IN PART and the motion for prejudgment interest is GRANTED.

**I.    Background**

Morse Electric, Inc. ("MEI" or "Plaintiff") filed a complaint against Defendant Stearns, Conrad and Schmidt, Consulting Engineers, Inc. ("SCS" or "Defendant") asserting claims of breach of contract, tortious interference with prospective economic gain, and violations of the Minnesota Prompt Payment Act. (Doc. 2.) Defendant counterclaimed for breach of contract. These claims all arose from the course of performance of a contract between the parties which required Plaintiff to perform electrical construction services for the Pine Bend Renewable Natural Gas Production Facility (the "Project") in Inver Grove Heights, Minnesota. The court conducted a bench trial in April 2025. On July 23, 2025, the court entered its decision in favor of SCS and

against MEI in the amount of $698,674.  (Doc. 212.)  Judgment was entered the same date.  (Doc. 213.)

SCS now moves for attorney's fees and costs in accordance with the terms of the contract and also seeks prejudgment interest.  Although MEI sought and received an extension of time to respond to the motion for fees, MEI has not responded to SCS's motion for fees.  (Docs. 218, 219.)  MEI has also failed to respond to the motion seeking prejudgment interest.

## II.     Motion for Attorney's Fees

SCS prevailed on its claim of breach of contract against MEI.  As noted in the court's decision, Minnesota law applied to this matter based on the express terms of the contract.  The contract also had a provision allowing SCS to "receive all costs and expense, including reasonable attorney fees incurred by SCS as a result of such breach." (Ex. 801 at 6.)  The amount of reasonable attorney's fees must be determined on the facts of each case.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 620–21 (Minn. 2008) (noting that Minnesota follows the procedure set forth in *Hensley* when determining reasonable attorneys' fees).  The court has wide discretion in deciding the amount of a reasonable attorney fee award.  *See Hensley*, 461 U.S. at 437.

The court has discretion to reduce the number of compensable hours if it determines that the claimed time spent is excessive, and the court may set a reasonable hourly rate.  *Carter v. Sedgwick Cnty., Kan.*, 36 F.3d 952, 956 (10th Cir. 1994).  The court may also reduce the award based on "redundant, excessive, or improperly billed hours, or based on the attorneys' limited success in the case." *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1207 (10th Cir. 2015).

SCS seeks the following in its motion: 1) $1,471,919.00 in fees for 4,047.6 hours of legal services performed by multiple individuals at the law firm Jones Walker LLP from February 2022

through July 2025; 2) $144,371.12 in costs incurred during Jones Walker's representation; 3) $23,607.50 in fees for 67.85 hours of legal services by Heley, Duncan & Melander ("HDM") for representation relating to the Minnesota action regarding the liens filed; 4) $568 in costs incurred in the Minnesota action; and 5) $69,507 in attorney's fees and $6,000 in costs in conjunction with filing the motion for attorney's fees.

**Reasonable Hours**. The court first considers whether the hours expended were reasonable by reviewing the following factors: "(1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (citation modified).

With respect to Jones Walker, SCS requests fees for eight different attorneys and ten different support staff for more than 4,047 hours of legal services. This is a very large number of timekeepers on a case which can result in inefficiency. *M.B. v. Howard*, 555 F. Supp. 3d 1047, 1076 (D. Kan. 2021). Essentially, there were four main timekeepers who billed for Jones Walker: Partner Neal Sweeney billed 251.3 hours; Partner Amy Anderson billed 514.8 hours; Associate Bradley Sands billed 2,104.1 hours; and Associate Caitlin Kicklighter billed 903.6 hours. All four attorneys came to trial in Wichita, Kansas, on this matter, and three of those attorneys billed for their time at trial while only one attorney, Sands, questioned witnesses.[1]

The first factor is whether the tasks being billed would normally be billed to a paying client. Based on a review of the time records, it appears that these entries are all related to Jones Walker's representation in this matter. However, there are many entries that are redacted and there are also

---

[1] Sweeney did not bill for his time in trial. (Doc. 214-1 at 226–27.)

entries that are vague or generic. Therefore, the court will discount the time due to the inability to determine whether certain tasks are duplicative or the firm has charged for more hours than are reasonable.

As to the second factor, the number of hours spent on tasks is significant. For example, SCS filed a ten page reply brief in support of its motion for summary judgment. (Doc. 127.) It is notable that SCS characterized the "request to the court" on summary judgment as "straightforward" (Doc. 127 at 1) yet SCS billed at least 45.7 hours between multiple timekeepers for the ten page brief.[2] (Doc. 214-1 at 181–83.) Based on the content of the brief, the court finds that SCS spent significantly more hours than necessary. At most, SCS should have billed 15 hours for this brief. This may be due to the multiple timekeepers involved in this matter which is addressed in another factor. Another example is the billing SCS charged for its reply brief in support of its motion to strike Plaintiff's jury demand. (Doc. 72.) This reply brief was six pages long but yet SCS's attorneys billed 38.4 hours for time spent working on the brief according to the billing entries.[3]

As to the third factor, this case was not overly complex. It was a straightforward breach of contract case. Although the court acknowledges that the construction project at issue was complex, the court was required to determine whether Plaintiff breached the contract by walking off the job site. Trial was relatively straightforward. It lasted four days and included only three witnesses. (Doc. 195.) The parties stipulated to many exhibits. While discovery was prolonged by extensions, there was only one motion to compel filed. That motion was granted by the magistrate

---

[2] The court notes that Plaintiff failed to offer any facts in the response to summary judgment. (Doc. 123.) Therefore, SCS was only responding to arguments in its reply brief.

[3] Some of the time entries included other tasks related to reviewing discovery and other matters. However, the court is unable to determine how much time was spent on certain matters due to SCS's block billing and generic billing entries. This provides another basis to discount the hours billed.

judge and this court upheld that decision. While SCS later moved for sanctions, the court denied those motions after trial.

As to the fifth factor, SCS argues that Plaintiff employed aggressive tactics that increased the costs and complexity. SCS cites to the motion to compel and excessive discovery demands. A single motion to compel and an increase in interrogatories from 25 to 60 is not overly aggressive. SCS also asserts that Plaintiff filed meritless motions, including a motion to compel arbitration, a motion to add a claim for conversion, and a motion to remove the mediator's evaluation. (Doc. 214 at 6.) While the court understands that SCS views these motions as meritless, they were not of such a character that would require an extensive amount of work. The court does not view Plaintiff's counsel's litigation tactics in this case as necessitating a higher number of hours than a typical breach of contract case. *See e.g., Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1263–64 (D. Kan. 2017) (approving higher than expected amount due to defendant's behavior in running up substantial fees with inordinate discovery requests, multiple motions to compel, expert testimony, 36 motion in limine objections, 20 witnesses and numerous objections).

Turning to the sixth factor, duplication of services, SCS's billing statements show that multiple timekeepers (up to four at a time) engaged in the same tasks, such as drafting discovery, drafting and reviewing briefs, and meeting with the client. The court is left with the impression that SCS has "overlawyered" this case. *Bores v. Domino's Pizza LLC*, No. 05-2498, 2008 WL 4755834, at *7 (D. Minn. Oct. 27, 2008). "The involvement of so many cooks in the kitchen has resulted in a significant amount of redundancy and overlapping billing. . . [It] may be reasonable to expect a client to pay the cost of having several lawyers. . . . However, the issue deserves scrutiny when the prevailing party asks the losing party to assume that extra financial burden." *Id.* (citation

modified). The court finds the number of hours billed in this case to be excessive which is, in part, the result of multiple timekeepers.

After review, the court notes that undertaking the calculation of reasonable hours can be a "herculean task." *Wirtz v. Kansas Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1197 (D. Kan. 2005). The court is not required to identify each disallowed hour and may arrive at a reasonable number through a general reduction. *Id.* After review of the entire billing records, the court's familiarity with this matter and the straightforward nature of the claims, the length of trial, Plaintiff's maneuvering, and the duplication of services by multiple timekeepers, the court will exercise its discretion and reduce SCS's total number of hours requested for Jones Walker attorneys and determine an appropriate amount of total fees as discussed herein. The court declines to go through the billing records hour by hour as to each attorney and paralegal.

With respect to 67.85 hours of legal services by HDM for representation relating to the Minnesota action regarding the liens filed, the court finds the requested hours to be reasonable. SCS also seeks an award of $69,507 in attorney's fees for filing the fee motion. The court denies SCS an award of attorney's fees in conjunction with filing the motion for fees.

**Reasonable Fee**. Next, the court reviews whether the hourly rates are reasonable. The hourly rates are as follows for the primary timekeepers: Sweeney ($495), Anderson ($460), Sands ($350), Kicklighter ($330). The hourly rates for other associates range from $315 to $420. The paralegal and other hourly rates range from $180 to $280. With respect to the HDM attorneys, the hourly billed rate was approximately $350 per hour.

There has been no objection to these rates from Plaintiff. The court finds the rates reasonable based on the affidavits in support of the motion for fees. (Docs. 214-1, 214-2.)

**Lodestar**. The lodestar is the number of hours times the reasonable fee. The lodestar figure includes "most, if not all, of the relevant factors constituting a reasonable attorney's fee," and therefore the lodestar is a presumptively reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (citations omitted).

With respect to the Jones Walker's fees, the court finds that SCS has failed to justify the number of hours billed it seeks, has failed to provide adequate description for its services to avoid duplicate billing, and has sought significant fees for excessive, redundant, and unnecessary work. Notably, Jones Walker consistently had four attorneys billing for the same services and the number of hours billed for those services were overly excessive. The court concludes that a substantial reduction of the requested fees and hours is warranted.

There are additional considerations that would warrant further reductions. SCS was not completely successful in that it recovered less than the amount it sought at trial. *See, e.g.*, *Wiens v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 23-CV-1002-JWB, 2025 WL 327375, at *4–*5 (D. Kan. Jan. 29, 2025) (reducing attorney's fees where a party achieved "limited success" at trial). Therefore, a complete recovery of attorney's fees is not appropriate. Moreover, the amount of fees requested is significant in light of the judgment obtained. The requested amount is more than two times the judgment. While not dispositive, the court finds that notable in this case. After considering all circumstances as required by the Tenth Circuit and Minnesota law and having carefully reviewed the time sheets submitted by Jones Walker counsel, the court finds that an appropriate award in this case for time and labor is $500,000.[4]

---

[4] Notably, the court recently granted a motion for attorney's fees on a breach of contract case with competing breach of contract claims. That matter involved a three day jury trial and the prevailing party had two attorneys working on the case during trial. In that matter, the amount sought was only $350,000. *See Bad Rhino Games, LLC v Turn Me Up Games, Inc.*, Case No. 23-2303-JWB, 2025 WL 2637469 (D. Kan. Sept. 12, 2025).

7

With respect to the work performed by HDM attorneys, the court finds that an award of $23,607.50 is reasonable.

**Costs**. In addition to attorney fees, SCS seeks expenses incurred in this matter as allowed by the contract. The court will allow SCS to recover expenses as long as they are reasonable. *See Sussman v. Patterson*, 108 F.3d 1206, 1213 (10th Cir. 1997). SCS seeks a total of $144,371.12 in costs for 1) electronic discovery and document management; 2) non-testifying and legal fee experts; 3) travel; 4) delivery and courier services; and 5) court reporter fees and transcripts. The court will address each category in turn.

As to electronic discovery, SCS hosted and managed a Relativity workspace for document storage and management from September 2023 to June 2025 for a total cost of $43,555.33. There were a large number of documents produced in this case regarding the work on the underlying project for the contract. The court finds these costs to be reasonable.

Next, SCS seeks reimbursement for its costs ($25,713.10) to retain Lighthouse Consulting Group, LLC, as a non-testifying expert consultant to provide "specialized analysis and consulting services throughout this complex construction litigation." (Doc. 214 at 23.) SCS also seeks reimbursement for the costs to retain an Oklahoma law firm to provide specialized expertise regarding the local legal market in connection with the motion for sanctions. The court denies these requested fees as they are not reasonable. SCS's project manager Daren Nightingale was fully competent to advise counsel on the complexities regarding the underlying project. With respect to the attorney's fee motion, there was nothing complex in the request for fees that required outside counsel to provide an expert opinion.

SCS also requests reimbursement for its travel expenses. The total travel expenses billed were $31,757.41. These expenses are broken down by categories including depositions and trial.

In reviewing the billing entries, it is clear that multiple attorneys attended trial and billed for travel. The court will therefore allow $20,000 in travel expenses as MEI should not be responsible for SCS's decision to have multiple attorneys present at trial.

The remaining requests include transcripts and delivery services. The court finds that these are reasonable. The court awards SCS a total of $99,599.59 in connection with costs incurred during representation by Jones Walker. The court also awards the $568 in costs in connection with the Minnesota action. The total cost award is $100,167.59.

### III.    Prejudgment Interest

SCS also moves for prejudgment interest on the $698,674 judgment. SCS asserts that Minnesota law applies to prejudgment interest based on the choice of law provision in the contract. (Ex. 801 at 6.) A federal court sitting in diversity applies state law to the issue of pre-judgment interest. *Youngs v. Am. Nutrition, Inc.*, 537 F.3d 1135, 1146 (10th Cir. 2008). Prejudgment interest is a "substantive" issue under Oklahoma law for choice-of-law purposes. *See C&H Power Line Constr. Co. v. Enter. Prods. Operating, LLC*, 386 P.3d 1027, 1035 (Okla. 2016). Therefore, the court will apply Minnesota law.

Under Minn. Stat. § 549.09, prejudgment interest accrues from the earliest of three events: commencement of action, demand for arbitration, or written notice of claim. The rate is calculated at 10 percent. *Id.* SCS asserts that it should be awarded prejudgment interest from the time SCS sent the notice of claim to Plaintiff on February 16, 2022. Alternatively, SCS asks that the court use the date of the filing of its counterclaim. (Doc. 17.) The court finds that the notice of claim is not sufficient here. In that notice, SCS merely told Plaintiff that it would hire a contractor to complete the project. That contractor, however, did not begin work on the project until after February 16. At that point in time, SCS had not submitted any payments to the third party and it

was not known as to whether the amount billed by the new contractor would exceed the amount remaining under the subcontract. Therefore, the court finds that prejudgment interest is to accrue at the time SCS filed its counterclaim on June 10, 2022. As a result, SCS is entitled to $218,024.57 in prejudgment interest.

**IV.    Conclusion**

SCS's motion for attorney's fees (Doc. 214) is GRANTED IN PART and DENIED IN PART and the motion for prejudgment interest (Doc. 217) is GRANTED. SCS is awarded $523,607.50 in attorney's fees and $100,167.59 in costs. SCS is also awarded prejudgment interest in the amount of $218,024.57. An amended judgment will issue.

IT IS SO ORDERED. Dated this 18th day of September 2025.

    __s/ John Broomes _____
    JOHN W. BROOMES
    UNITED STATES DISTRICT JUDGE